UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALLEN LEE SURPRISE,

        Plaintiff,

   v.                                                     Case No. 18-C-1432

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Allen Lee Surprise filed this action for judicial review of a decision by the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI. Surprise argues that the decision of the administrative law judge (ALJ) was flawed and requires remand for two reasons: 1) the ALJ did not adequately account for a portion of the medical expert's opinion in the hypothetical question posed to the vocational expert (VE) and in the assessment of Surprise's residual functional capacity (RFC); and 2) the ALJ violated the law of the case doctrine. For the reasons that follow, the decision of the Commissioner will be affirmed.

## BACKGROUND

On September 3, 2009, Surprise filed applications for DIB and SSI with an alleged onset date of June 1, 2007. R. 196. Surprise noted that a blood vessel with a calcium deposit near his breast bone limited his ability to work. R. 232. Following the denial of his applications initially

and on reconsideration, Surprise requested a hearing before an ALJ. ALJ Patrick J. Toal conducted a hearing on May 15, 2012, at which Surprise amended the alleged onset date to March 10, 2008. R. 47–104. In a written decision dated June 8, 2012, the ALJ concluded Surprise was not disabled. R. 21–35. After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Surprise sought judicial review of the ALJ's decision in the United States District Court for the Eastern District of Wisconsin. The case was remanded because a portion of the recording of the hearing, the testimony of the VE, was inaudible, thereby precluding review. The court did address several issues at that time, however, and the decision entered then provides some of the background of the case. R. 1019–29.

ALJ Toal held a second administrative hearing on July 7, 2015, at which Plaintiff, two medical experts, and a VE testified, and the ALJ issued a second decision on May 20, 2016, again finding Surprise was not disabled. R. 845–58. The Appeals Council denied review of that decision, and Surprise filed a second lawsuit in this court. On March 22, 2017, the case was again remanded for further proceedings based upon a stipulation of the parties. R. 1519; *see Surprise v. Berryhill*, Case No. 1:16-cv-01028-WCG (E.D. Wis.). As the case had previously been remanded to the same ALJ, the Appeals Council directed that the case be assigned to another ALJ. R. 1525. On March 22, 2018, ALJ Margaret J. O'Grady conducted a video hearing where Surprise, who was represented by counsel, medical expert Dr. James Wargel, and a VE testified. R. 1457–1500.

At the time of the hearing, Surprise was 49 years old, 5'4", and weighed around 140 pounds. R. 1459. Surprise stated that he currently lived with his girlfriend and 16-year-old daughter. *Id.* Surprise testified that he owns his home, is reliant upon his girlfriend for income, and that he has not worked since he submitted his applications. R. 1461. Surprise stated that the highest level of

2

education he had completed was the eighth grade, and that he is somewhat able to read and write but is unable to read and fill out a job application without assistance. He can also do basic addition and subtraction, but cannot do multiplication or division. R. 1460, 1470, 1472.

Surprise stated that he takes Tylenol and Advil on a daily basis for pain but does not take any prescription medications at this time. R. 1462. He reported that he takes the medication to treat the constant pain in his neck, back, left shoulder, knees, hands, and fingers that he experiences daily. R. 1463–65. Regarding daily activities, Surprise stated he sits around the house, watches television, feeds his dogs, and walks outside briefly when able. R. 1466. Surprise further testified that he generally receives assistance from his girlfriend with personal needs such as bathing, as well as cooking, housecleaning, and shopping. R. 1467.

Dr. Wargel, a clinical psychologist, also testified, and stated that Surprise's primary documented issues are depressive disorder and anxiety disorder, but that his symptoms did not meet or equal any listings. R. 1413, 1478–80. Dr. Wargel further testified regarding Surprise's limitations as a result of these specific impairments. R. 1481–86.

In a sixteen-page decision dated July 2, 2018, the ALJ determined that Surprise is not disabled. R. 1429–44. The ALJ's decision followed the five-step sequential process for determining disability prescribed by the Social Security Administration (SSA). R. 1430–31. At step one, the ALJ concluded that Surprise has not engaged in substantial gainful activity since his March 10, 2008 alleged onset date. R. 1432. At step two, the ALJ concluded that Surprise has the following severe impairments: an anxiety disorder, a depressive disorder, post-concussion disorder, arthritis, scoliosis, and degenerative disc disease. *Id.* At step three, the ALJ concluded Surprise did

3

not have an impairment or combination of impairments that met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 1433–34.

The ALJ next assessed Surprise's RFC and found that he can perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) subject to the following limitations:

> no climbing of ladders, ropes or scaffolds; only occasional climbing of ramps and stairs; no more than frequent overhead reaching; and no concentrated exposure to fumes, dust or other environmental irritants. Mentally, he can perform routine, repetitive tasks and follow simple, non-complex instructions. He is capable of occasional interaction with coworkers and supervisors with only brief, superficial public contact. He can tolerate less than frequent change in the work routine. He is capable of performing regular work tasks that do not involve joint, tandem or team work and are not performed in large groups or crowds. Work tasks will not involve fast-paced production work or work tasks that are dependent on others, defined as production-type work where one person's task directly follows from and is dependent on another's task.

R. 1435. At step four, the ALJ concluded, based on the testimony by the VE, that Surprise would not be able to perform any past relevant work, but would be able to perform the following occupations: press operator and injection molder. R. 1442–43. Accordingly, the ALJ found that Surprise is not disabled. R. 1444. The Appeals Council denied Surprise's request for review, making the ALJ's decision the final decision of the Commissioner.

## LEGAL STANDARD

The question before the court is not whether the judge reviewing the case thinks the plaintiff is disabled. Judicial review of the decisions of administrative agencies is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Supreme Court recently reaffirmed that

"[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Beistek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

**A. Failure to Account for Portion of Dr. James Wargel's Opinion in Hypothetical Question to VE and RFC**

Surprise contends that the ALJ failed to account for medical expert Dr. James Wargel's limitation that Surprise is limited to one-, two-, or three-step instructions in the hypothetical question posed to the VE and in Surprise's RFC. "Although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

During Dr. Wargel's testimony, the ALJ asked whether Surprise "would be able to perform work involving simple, non-complex, routine, repetitive, type of instructions[.]" R. 1481. Dr. Wargel answered "[y]es" in response. *Id.* Surprise's attorney later asked Dr. Wargel what he meant by the term "simple instructions," to which Dr. Wargel responded, "Direct, one or two steps or three steps that can be easily followed. In [Surprise's] particular case, involving verbal instruction and or demonstration is necessary." R. 1485–86.

A VE also testified at the hearing. The ALJ asked the VE what type of jobs were available for a hypothetical individual limited to "work that's considered routine, repetitive, non-complex, simple, non-complex-type of instructions," among other limitations. R. 1489. The VE identified two representative occupations—press operator and injection molder—that this hypothetical individual would be able to perform given the limitations posed by the ALJ. During the questioning of the VE, the following exchange occurred between Surprise's counsel and the VE:

> Q: [L]et's modify this slightly and we'll use the [ALJ's] hypothetical, but instead of the term, routine, non-complex, simple, and repetitive, we're

> going to change that to that the individual is going to have a -- or a GED reasoning level of 1 -- strike that. It's GED -- the language is going to be 1 and math of 1, and that the instructions are limited to one to three steps. Now, under the GED definition of reasoning level 1, it's one or two steps and then reasoning level 2 is more complex. So it's going to fall in between that level of GED 1 and -- reasoning level 1 and GED reasoning level of 2. Correct?
>
> VE: Right. I need to point out something, though.
>
> Q: Okay.
>
> VE: The Dictionary of Occupational Titles talks about what a – they talk about one, two, and three step operations, although, they do not describe exactly what a step is. For example, a cleaner II is an SVP 1, which under the DOT regulations, would be one to two step operations, but a cleaner II does multiple activities in cleaning factories in a commercial setting. So it's difficult for me to answer any questions, if you're talking about specific steps.
>
> Q: So are -- so let's ask, then, just this way, since the steps are not clear. Let's just use this. That the individual is limited to R1, language 1, math 1, does that affect any of the jobs you've cited and if so, is there replacements that you can put in, in place of them?
>
> . . .
>
> VE: None of the positions that I've identified are going to have all three levels at the GED of 1. Some of them are going to have math levels -- like for example, the press operator and the laminator are both math level 1, but their reasoning levels are 2. All of them are going to have language skills at the 1 that I've identified within here because they're vary, each one of them, between the math and-- I'm sorry. Between the reasoning and the mathematics. So if you're using 1 as your guide for all of them, then there would be no occupations within what I've cited. And there's none that I can identify at the light and sedentary level.

R. 1493–94. With respect to Surprise's mental capacity, the ALJ's RFC limited him to performing "routine, repetitive tasks and follow simple, non-complex instructions," R. 1435, among other things.

7

Surprise contends that the ALJ's failure to address Dr. Wargel's opinion limiting Surprise to one- to three-step instructions in his RFC and failure to ask the VE if the two identified occupations could be performed by a person limited to one- to three-step instructions was in error. Although the ALJ's question to the VE did not expressly reference one- to three-steps, as the VE pointed out, and Surprise's counsel agreed, it is difficult to answer questions solely based on the number of steps involved because what is considered a step is not clear, R. 1493–94, and there is nothing indicating that the VE's comprehension of what constitutes a step was in contradiction or conflict with Dr. Wargel's.

The ALJ's hypothetical to the VE and limitation in the RFC adequately accounted for Dr. Wargel's opinion. Dr. Wargel stated that Surprise could perform work involving instructions that are simple, non-complex, routine, and repetitive. In the hypothetical question posed to the VE, the ALJ limited the hypothetical individual to "work that's considered routine, repetitive, noncomplex, simple, noncomplex-type of instructions." R. 1489. This language is in line with Dr. Wargel's opinion and adequately captures the restrictions in his opinion. Although the occupations identified by the VE involved a reasoning level of 2, "courts have held that a SVP Level 2 is 'not inconsistent with a claimant's limitations to simple, routine tasks.'" *Eggleston v. Colvin*, No. 13 C 5208, 2015 WL 2208221, at *5 (N.D. Ill. May 7, 2015) (collecting cases) (quoting *Thompkins v. Astrue*, No. 09 C 1339, 2010 WL 5071193, at *10 (N.D. Ill. Dec. 6, 2010)).

It is also significant that the VE was present during Dr. Wargel's testimony. He heard his description of the type of jobs Surprise was capable of performing. Where the VE is otherwise familiar with the claimant's limitations, such as "when the record shows the VE has independently reviewed the medical record or heard testimony directly addressing those limitations," what may

under other circumstances appear to be a gap in the hypothetical does not require reversal. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); see also *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). The record here reflects that the VE was aware of and took into consideration Dr. Wargel's testimony in his response to the hypothetical.

Surprise also contends that the ALJ failed to resolve the apparent conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT) violated SSR 00-4p, 2000 WL 1898704, which requires an ALJ to identify any conflicts between occupational evidence provided by a VE and information in the DOT. But the VE stated "even if there was a conflict or [his] testimony was not covered by the Dictionary of Occupational Titles that these jobs can be done consistent with the limitations provided to [him.]" R. 1492–93. As the Supreme Court recently explained, "[w]hen offering testimony, the [vocational] experts may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'" *Biestek*, 139 S. Ct. at 1152–53 quoting Social Security Ruling, SSR 00–4p, 65 Fed. Reg. 75760 (2000)). Consequently, the hypothetical posed to the VE and the ALJ's RFC finding did not contradict or exclude portions of Wargel's opinion.

## B. The Law of the Case Doctrine

Surprise argues that the ALJ's decision violated the law of the case doctrine because it altered a portion of the RFC related to Surprise's physical restrictions. In the prior ALJ's decision, Surprise was limited to "frequent overhead reaching" and "occasional fine manipulation with the right upper extremity." R. 850. In the recent ALJ decision, Surprise was limited to "no more than frequent overhead reaching." R. 1435.

9

"[T]he law of the case doctrine comes into play only with respect to issues previously determined." *Key v. Sullivan*, 925 F.2d 1056, 1061 (7th Cir. 1991). "The doctrine 'most often applies to issues already fully decided in cases that subsequently re-appear before the rendering court.'" *Id.* (quoting *The Trustees of Indiana Univ. v. The Aetna Cas. & Surety Co.*, 920 F.2d 429, 435 (7th Cir.1990)). The doctrine, which requires "the trial court to conform any further proceeding on remand to the principles set forth in the appellate opinion unless there is a compelling reason to depart," *Law v. Medco Research, Inc.*, 113 F.3d 781, 783 (7th Cir.1997), "is applicable to judicial review of administrative decisions." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998).

In the court's March 22, 2017 order remanding the case for further administrative proceedings in response to the parties' stipulation, the court stated "[o]n judicial remand, the Commissioner will offer Plaintiff the opportunity to submit additional evidence and to have a hearing, and issue a new decision." R. 1519. This remand order did not include any findings by the court regarding Surprise's RFC, and thus did not violate the law of the case doctrine. *See Key*, 925 F.2d at 1061 (holding that "the law of the case doctrine comes into play only with respect to issues previously determined," and that "[i]f an issue is left open after remand, the lower tribunal is free to decide it"); *Angevine v. Sullivan*, 881 F.2d 519, 522 (7th Cir. 1989) (stating that to determine whether the Government violated the law of the case on remand, the Court must carefully consider the scope of the district court's remand order). Unlike *Key*, this court's remand order was not narrow, but rather directed the Commissioner to hold a new hearing and to reach a new decision. The order did not set forth the court's determination regarding Surprise's RFC.

Even if the ALJ's decision did not violate the law of the case doctrine, Surprise contends remand is still merited because the ALJ exceeded her authority on remand. Pursuant to 20 C.F.R.

§ 404.977(b), "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." As the Appeals Council remand order directed the ALJ to "[g]ive further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide the rationale with specific references to evidence of record in support of assessed limitations," the ALJ did not act inconsistent with the Appeals Council's remand order in creating an RFC that limited Surprise to no more than frequent overhead reaching in Surprise's RFC assessment. As Surprise does not challenge the ALJ's reasoning in support of this conclusion, and the court finds that this assessment is supported by the record, the decision of the Commissioner will be affirmed.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** this  23rd  day of September, 2019.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court